# UNITED STATES DISTRICT COURT

## Northern District of California

| | |
|---|---|
| DIWAN WILLIAMS,<br><br>                Plaintiff,<br>   v.<br><br>SYSCO SAN FRANCISCO, INC.<br>TEAMSTERS LOCAL 853,<br><br>                Defendants.<br>                                      / | No. C 10-03760 MEJ<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (RE: DOCKET NO. 21)** |

## I. INTRODUCTION

Pending before the Court is Sysco San Francisco Inc.'s (Defendant) Motion for Summary Judgment. Dkt. No. 21. Diwan Williams (Plaintiff) has filed an Opposition, to which Defendant filed a Reply. Dkt. Nos. 31 and 34. Having reviewed and considered the papers submitted by the parties, the Court **DENIES** Defendant's Motion in its entirety for the reasons explained below.

## II. BACKGROUND

A.   <u>Procedural Background</u>

Plaintiff initiated this lawsuit by filing a Complaint against Defendant, his former employer, on August 24, 2010.[1] Dkt. No. 1. Plaintiff alleged that Defendant discriminated against him and ultimately terminated his employment due to his military service. *Id*. The Complaint specifically asserted the following claims against Defendant: (1) discrimination in violation of the Uniform Services Employment and Reemployment Rights Act (USERRA), 42 U.S.C. § 4301 *et seq*.; (2) discrimination in violation of California Military & Veterans Code § 394 *et seq*.; (3) wrongful

---

[1] Plaintiff's Complaint also asserted a claim for breach of statutory duty of fair representation against his Union, Teamsters Local 853. Dkt. No. 1. But on May 6, 2011, Plaintiff dismissed the Union with prejudice from this action after the two parties reached a settlement. Dkt. No. 17.

termination in violation of public policy; and (4) breach of contract. *Id.* On June 30, 2011, Defendant moved for summary judgment on Plaintiff's first three claims.[2] Dkt. No. 21.

B.    Factual Background

Plaintiff began working for Defendant in 2006 as a warehouse order selector. Dkt. No. 28, Joint Statement of Undisputed Facts (JSF) ¶ 8. Throughout his employment, he worked the night shift from Sundays through Thursdays. JSF ¶ 9. In 2008, Plaintiff enlisted in the Army National Guard and informed Defendant's Human Resources Director, Judith La Frentz, about his enlistment. JSF ¶¶ 16, 17. Defendant's only written policy about military leaves of absence was contained in its employee handbook and provided that "[a]ll provisions under the [USERRA] will be followed." JSF ¶ 13. Even though Defendant preferred that employees provide notification of military leave in writing, it allowed employees to take military leave without written notice, as long as there was advance notice pursuant to USERRA. JSF ¶¶ 14, 26.

Pursuant to company policy, Plaintiff notified La Frentz that he was taking an extended military leave from September 9, 2008, through April 14, 2009. JSF ¶ 18. Plaintiff's request was granted, and he provided La Frentz with documents that confirmed he was scheduled for military leave for that period. JSF ¶¶ 18, 19. Plaintiff returned from military leave earlier than expected in March 2009 and his employment was reinstated. JSF ¶ 21. At that time, Plaintiff was provided with a copy of Defendant's new attendance policy, including the call-in procedures for absences. JSF ¶¶ 22, 25.

Defendant's new attendance policy defined a "No Call, No Show" as a failure to work a scheduled shift without properly notifying Defendant. JSF ¶ 23. An employee that received a "No Call, No Show" would be assessed three points for each violation. JSF ¶ 23. Under the policy, Defendant would take appropriate disciplinary steps based on the points accumulated by an employee. JSF ¶ 23. Specifically, during a 12-month period, two or more points would result in a written verbal warning, six or more points in a second written warning, eight or more points in a final

---

[2] Both parties do not address the status of Plaintiff's last claim for breach of contract, which was specifically alleged in the Complaint against Defendant and not the Union. Dkt. No. 1.

warning, and ten or more points in termination. JSF ¶ 23. Defendant would not issue any attendance points if it had written verification for a leave of absence. JSF ¶ 24.

After his return to work, Plaintiff continued to participate in periodic military training exercises. JSF ¶ 21. During a meeting in April 2009, La Frentz instructed Plaintiff to give advance notice of any military leave and asked him to provide written confirmation of his military training dates. JSF ¶ 26. Based on the 2010 dates provided by Plaintiff's military supervisors, he was granted military leave from January 7 to 10, February 19 to 21, and March 4 to 7. JSF ¶ 31. As of March 2010, Plaintiff was on notice that he had accumulated four points under Defendant's attendance policy and that ten points would result in termination. JSF ¶ 34.

Plaintiff's military training from March 4 to 7 was cancelled. JSF ¶ 44. Plaintiff did not inform Defendant about this cancellation, and Defendant learned about it for the first time through this lawsuit. JSF ¶ 45. Plaintiff worked his entire shift on Thursday, March 4, but he did not show up to work on Sunday, March 7. JSF ¶¶ 39, 40. Plaintiff also did not call in to explain his absence. JSF ¶ 43. Because Plaintiff's absence on March 7 was coded as military leave pursuant to the notice he had provided earlier, Defendant did not take any action at that time. JSF ¶ 41.

On March 7, plaintiff received an e-mail from his Sergeant that there would be a training exercise on March 11 to 14.[3] JSF ¶ 48. At work the next day, Plaintiff spoke to his supervisor, Michael Klag, who did not have authority to grant military leaves of absence. JSF ¶¶ 49, 76. Plaintiff claims that during this meeting he informed Klag that he would be out on military leave on March 11 and 14. Dkt. No. 32, Pl. Decl. ¶ 27. Klag denies this and asserts that in their meeting Plaintiff only requested to use a floater holiday for March 10, which he approved without asking why Plaintiff needed it. JSF ¶¶ 49, 50. Plaintiff never contacted the Human Resources Department regarding his need to take an additional military leave and never provided any written verification about the upcoming military training. JSF ¶ 60.

---

[3] The parties have agreed to this fact, but it appears that Plaintiff actually knew about the March 11 to 14 training on February 16, when his Sergeant explicitly informed him by e-mail that the March 4 to 7 training was postponed until the following weekend. *See* Pl. Decl. ¶ 23.

3

Plaintiff was not at work on March 11 and 14, and he did not call in for both absences. JSF ¶¶ 52, 59. On March 14, Klag e-mailed La Frentz about Plaintiff's absences and asked if she had any further information. JSF ¶ 53. Plaintiff returned to work on March 15. JSF ¶ 54. When asked by Klag about his absences, he replied that he was at military training. JSF ¶ 55. Klag did not pass on this information to La Frentz or the Human Resources Department. JSF ¶ 66. Under Defendant's attendance policy, Plaintiff was assessed six points for his two absences which resulted in him having ten total points. JSF ¶ 64. On March 16, Defendant, without Klag's involvement, suspended Plaintiff with the intent to terminate him. JSF ¶¶ 61, 66. Plaintiff claims that when Sheri Sanchez, Defendant's Warehouse Director, gave him the suspension letter, he notified her that he was at military training on March 11 and 14, which she disputes. Pl. Decl. ¶ 30. Six days later, Defendant officially terminated Plaintiff's employment. JSF ¶ 69.

Plaintiff filed a grievance regarding his termination with his Union, Teamsters Local 853. JSF ¶ 70. On March 26, a grievance hearing was held. JSF ¶ 70. At the hearing, La Frentz and Jeff Szostak, Defendant's Vice President of Operations, learned for the first time that Plaintiff was claiming to have been at military training on March 11 and 14. JSF ¶ 71. Plaintiff, however, did not present any documentation to verify that he was on military leave. JSF ¶ 70. On April 7, Plaintiff received a copy of the military order that showed that he was at a training exercise from March 11 to 14. JSF ¶ 73. Plaintiff claims that his Union Representative produced this document to Defendant at a Board of Adjustments meeting on April 9. Pl. Decl. ¶ 32. An arbitration regarding Plaintiff's termination was held on May 18. JSF ¶ 74. At the arbitration, Plaintiff again did not present any documentation to prove that he was at a military training on March 11 and 14. JSF ¶ 74. The Arbitrator upheld Plaintiff's termination as a "just cause" termination. JSF ¶ 78. This lawsuit followed.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears both the initial burden of production as well as the ultimate burden of persuasion to

1 demonstrate that no genuine dispute of material fact remains. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations and citations omitted). On summary judgment, courts are required to view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## IV. DISCUSSION

In its Reply, Defendant argues that the only issue for the Court to consider on this Motion is whether it is liable for discrimination under USERRA because Plaintiff's military status was a motivating factor in his termination. Dkt. 34 at 2 ("To decide this motion, the Court need only consider whether Williams' termination for violating Defendant's attendance policy was motivated by animus towards Williams' military status). The Court agrees with Defendant and this is the only issue addressed in the Order.[4]

USERRA "prohibits discrimination against persons because of their service in the uniformed services." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). A violation of USERRA occurs when a person's:

---

[4] Plaintiff's California Military and Veterans Code § 394 claim is analyzed under the same legal standard as the USERRA claim. *See Flores v. Von Kleist*, 739 F.Supp.2d 1236, 1257-58 (E.D. Cal. 2010) ("However, it appears that claims brought under California Military and Veterans Code section 394 are analyzed under the framework applicable to claims brought under [USERRA]") (citing *Tarin v. Los Angeles*, 123 F.3d 1259, 1266 (9th Cir. 1997)). Thus, the Court, similar to the parties, does not discuss the state law claim. Defendant moves to dismiss Plaintiff's third claim for wrongful termination in violation of public policy solely on the grounds that Plaintiff's first two claims, which are the predicate for the wrongful termination claim, cannot withstand summary judgment. Because the Court does not grant summary judgment on Plaintiff's underlying claims, Defendant's Motion on the third claim is also denied.

**UNITED STATES DISTRICT COURT**
For the Northern District of California

> membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service . . . .

38 U.S.C. § 4311(c); *see Leisek*, 278 F.3d at 898. The Ninth Circuit has instructed that courts analyzing USERRA claims should use the scheme of burden of proof allocations approved by the Supreme Court in *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 401 (1983). *Leisek*, 278 F.3d at 898-99. The Ninth Circuit explained as follows:

> Under the scheme set forth in *Transportation Management*, the employee first has the burden of showing, by a preponderance of the evidence, that his or her protected status was "a substantial or motivating factor in the adverse [employment] action;" the employer may then avoid liability only by showing, as an affirmative defense, that the employer would have taken the same action without regard to the employee's protected status.

*Id.* (citations omitted). Under USERRA, the employer's discriminatory motivation:

> may be reasonably inferred from a variety of factors, including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Leisek*, 278 F.3d at 900 (quoting *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001)). "[M]ilitary status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Coffman v. Chugach Support Servs.*, 411 F.3d 1231, 1238 (11th Cir. 2005). "The court may consider 'all record evidence,' including the employer's 'explanation for the actions taken.'" *Leisek*, 278 F.3d at 900 (quoting *Sheehan*, 240 F.3d at 1014).

In arguing that Plaintiff's military duty was not a factor in his termination, Defendant first takes the position that Plaintiff was fired solely because he had accumulated ten points under its attendance policy. According to Defendant, because this has no relation to Plaintiff's military status, it cannot be liable under USERRA. This argument is misplaced. "An employer cannot escape liability under USERRA by claiming that it was merely discriminating against an employee on the

basis of his absence when that absence was for military service." *Erickson v. U.S. Postal Serv.*, 571 F.3d 1364, 1368 (Fed. Cir. 2009) ("To permit an employer to fire an employee because of his military absence would eviscerate the protections afforded by USERRA . . ."). In other words, because Plaintiff's military absences caused him to be in violation of Defendant's attendance policy and directly resulted in his termination, Defendant cannot shift the blame for Plaintiff's termination to only the attendance policy.

Nonetheless, Plaintiff must still establish that there is a genuine dispute as to whether his military service was a motivating factor in his termination. Defendant argues that it could not have been since none of its "decision makers" knew that Plaintiff was claiming he was at military training on March 11 and 14 before he was fired. But this is not the case. Viewing the evidence in a light most favorable to Plaintiff, the Court must consider that Plaintiff specifically told Sanchez when she suspended him on March 16 that his two absences stemmed from him attending military training. *See* Pl. Decl. ¶ 30. Defendant admits that Sanchez, along with La Frentz and Szostak, was involved in the decision to terminate Plaintiff. JSF ¶ 66. This means that Sanchez knew that Plaintiff claimed that he was on military leave when Defendant officially terminated his employment on March 22. *See* JSF ¶ 69. While Sanchez disputes Plaintiff's version of their meeting, this is an issue of fact that the Court cannot evaluate at the summary judgment stage. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987) ("Thus, at this stage of the litigation, the judge does not weigh conflicting evidence with respect to a disputed material fact. Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions") (internal citations omitted)).

Defendant disingenuously argues in its Reply that this disputed fact is not material because both Plaintiff and Sanchez agree that she did not know about his military training before the suspension letter was issued on March 16. Dkt. No. 34 at 7. As highlighted above, this argument ignores the elephant in the room that Sanchez allegedly knew about Plaintiff's "military excuse" from March 16 until he was officially terminated on March 22, but she did not do anything about it. *See* Dkt. No. 23, La Frentz Decl. ¶ 41 ("On March 22, 2010, I sent Diwan Williams a termination letter. .

7

1 . . Prior to making the decision to terminate Mr. Williams for violation of the attendance policy, I
2 conferred with Sheri Sanchez and Jeff Szostak"). This material fact may lead a reasonable juror to
3 conclude that Defendant had some animus towards Plaintiff and it may have been due to his military
4 status. *See Leisek*, 278 F.3d at 900 (noting that discrimination may be inferred from a variety of
5 factors, including inconsistencies between the proffered reason and other actions of the employer).

6       Other factual issues may also permit a reasonable juror to infer that Plaintiff's termination
7 stemmed from his military status. For instance, Plaintiff claims that he told his supervisor on March
8 8 that he would be absent on March 11 and 14 due to military training. Pl. Decl. ¶ 27. Even though
9 Klag denies this, and Defendant points to his March 14 e-mail as contemporaneous evidence that he
10 had no idea why Plaintiff was absent, this factual dispute, if resolved in favor of Plaintiff, may lead a
11 reasonable juror to conclude that something other than the absences, such as discrimination, may
12 have been a motivating factor in Plaintiff's termination. In the same manner, Defendant's decision
13 not to consult with Klag — who, as Plaintiff's direct supervisor, explicitly knew on March 15 that
14 Plaintiff's absences were due to military training — before terminating Plaintiff's employment may
15 lead to the inference that Defendant purposefully chose not to fully investigate the circumstances
16 behind Plaintiff's absences. *See* JSF ¶ 55.

17       Defendant concedes that Plaintiff was not required to provide advanced written notice of his
18 military leave. JSF ¶ 14. It argues that summary judgment is still appropriate because Plaintiff
19 "failed to provide verification of his service until long after he commenced litigation." Dkt. No. 21 at
20 18. Notably, while Plaintiff was verbally instructed at one point by La Frentz that he needed to
21 provide such verification (JSF ¶ 26), this was not the usual policy for Defendant. *See* Dkt. No. 22,
22 Ex. C, Szostak Depo. at 99 (confirming that as a general rule Defendant does not require written
23 documentation to be provided for military leave). Moreover, Plaintiff claims that Defendant was
24 provided with written verification of his military absences at a Board of Adjustments meeting on
25 April 9. Pl. Decl. ¶ 32. Defendant's denial of this claim only raises another factual issue for a juror.

26       Based on the above disputed facts, Plaintiff has shown that there is a triable issue about
27 whether his military status was a motivating factor in his termination. Much of Defendant's
28

argument and evidence points to the fact that Plaintiff is not credible, particularly because his story is so far-fetched. A more rationale explanation as to what transpired, from Defendant's perspective, is that Plaintiff never provided notice about his leave, as he had a practice of doing in the past, and that he did not want to provide any written verification afterwards because Defendant would then discover that he had an unexcused absence on March 7 when his military training was cancelled. But Defendant will have the opportunity to present this argument and evidence to the jury, which can properly evaluate the credibility of all witnesses and weigh the conflicting evidence — something that this Court cannot do — to determine the motivating factor behind Plaintiff's termination.

Defendant's last resort is to argue that it would have terminated Plaintiff's employment regardless of his military status due to its attendance policy, a lack of written verification for his absences, and after-acquired evidence. As explained above, the first two arguments are not persuasive. With respect to after-acquired evidence, Defendant argues that it would have fired Plaintiff after it learned in discovery that he had an unexcused absence on March 7 since his military training was cancelled, something that Plaintiff never reported to Defendant. But, as the parties agree, this after-acquired evidence would only limit the amount of damages that Plaintiff could recover and would not dismiss his claim. *See McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995). Because Defendant's Motion, and consequently Plaintiff's Opposition, do not specifically address the issue of how Plaintiff's damages should be limited (e.g., when Defendant specifically discovered Plaintiff's unethical conduct), the Court declines to rule on the issue. *See id.* at 362 ("The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered. In determining the appropriate order for relief, the court can consider taking into further account extraordinary equitable circumstances that affect the legitimate interests of either party").

Finally, the Court considers Defendant's objections to the evidence submitted by Plaintiff in support of his Opposition. *See* Dkt. No. 35. In ruling against Defendant, the Court only relies on three facts outside of the JSF and each of these are contained in Plaintiff's Declaration. Because ruling on each of Defendant's objections would not narrow the issues for trial, the Court only rules on

9

1 Defendant's objections for the three facts below, which were the facts considered by the Court.

2 First, Plaintiff testifies that he informed Klag on March 8 about his upcoming military leave. Pl. Decl. ¶ 27. Defendant does not object to this part of Plaintiff's testimony and no ruling is needed. *See* Dkt. No. 35 (Defendant only objects to the use of the word "acknowledged"). Second, Plaintiff testifies that written verification of his March 11 and 14 training was provided to Defendant at the Board of Adjustments meeting on April 9. Pl. Decl. ¶ 32. Defendant objects that under the best evidence rule the document itself should have been presented. This objection is overruled for the purposes of this Motion. The parties do not dispute whether there are written documents that corroborate Plaintiff was at military training on March 11 and 14. The issue is whether Plaintiff provided verification of this training to Defendant. Thus, the contents of the document are not material to the Court's decision. And there is no objection from Defendant that Plaintiff lacks the personal knowledge to make this statement. The third fact relied on by the Court is that Plaintiff told Sanchez on March 16 that his absences were due to military training. Pl. Decl. ¶ 30. Defendant objects to this testimony because "it contradicts Plaintiff's prior deposition testimony." Dkt. No. 35 at 15 ("Despite extensive questioning regarding his conversation with Sheri Sanchez at the time of suspension, Plaintiff withheld details at his deposition that he now conveniently testifies to in his declaration"). While the Court is troubled by what appears to be evasive and potentially untruthful testimony by the Plaintiff throughout his deposition, this particular objection is meritless. When asked at the deposition what transpired when Sanchez gave him the suspension letter, Plaintiff, after stating that he did not really remember the conversation, testified that: "To the best of my recollection, I told [Sanchez] that I was at the military drill." Dkt. No. 36, Szostak Supp. Decl., Ex. 1 at 166-67. This is consistent with Plaintiff's declaration and Defendant's objection is overruled.[5]

///
///

---

[5] Defendant's other objections to paragraph 30 of Plaintiff's Declaration appear to only take issue with Plaintiff's use of the term "again," which insinuates that Plaintiff had told Sanchez that he was absent due to military training before March 16. The Court has not considered this testimony in its decision and therefore does not rule on the objections.

UNITED STATES DISTRICT COURT
For the Northern District of California

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion is **DENIED** in its entirety. The parties are hereby REFERRED to a randomly assigned magistrate judge for a settlement conference. The parties shall file a joint status report within 14 days of completion of the mediation process.

**IT IS SO ORDERED.**

Dated: December 8, 2011

_____
Maria-Elena James
Chief United States Magistrate Judge