1

2

3

4                           UNITED STATES  DISTRICT COURT

5                             Northern District of California

6

7   DIWAN WILLIAMS,                                No. C 10-03760 MEJ

8                   Plaintiff,                     **ORDER DENYING DEFENDANT'S**
            v.                                     **MOTION FOR SUMMARY**
9                                                  **JUDGMENT (RE: DOCKET NO. 21)**
    SYSCO SAN FRANCISCO, INC.
10  TEAMSTERS LOCAL 853,

11                  Defendants.
    _____/
12

13                              **I.   INTRODUCTION**

14         Pending before the Court is Sysco San Francisco Inc.'s (Defendant) Motion for Summary

15  Judgment.  Dkt. No. 21.  Diwan Williams (Plaintiff) has filed an Opposition, to which Defendant

16  filed a Reply.  Dkt. Nos. 31 and 34.  Having reviewed and considered the papers submitted by the

17  parties, the Court **DENIES** Defendant's Motion in its entirety for the reasons explained below.

18                              **II.   BACKGROUND**

19  A.      Procedural Background

20         Plaintiff initiated this lawsuit by filing a Complaint against Defendant, his former employer,

21  on August 24, 2010.[1]  Dkt. No. 1.  Plaintiff alleged that Defendant discriminated against him and

22  ultimately terminated his employment due to his military service.  *Id*.  The Complaint specifically

23  asserted the following claims against Defendant: (1) discrimination in violation of the Uniform

24  Services Employment and Reemployment Rights Act (USERRA), 42 U.S.C. § 4301 *et seq*.; (2)

25  discrimination in violation of California Military & Veterans Code § 394 *et seq*.; (3) wrongful

26  _____

27         [1]  Plaintiff's Complaint also asserted a claim for breach of statutory duty of fair
    representation against his Union, Teamsters Local 853.  Dkt. No. 1.  But on May 6, 2011, Plaintiff
28  dismissed the Union with prejudice from this action after the two parties reached a settlement.  Dkt.
    No. 17.

1 termination in violation of public policy; and (4) breach of contract.  *Id*.  On June 30, 2011,

2 Defendant moved for summary judgment on Plaintiff's first three claims.[2]  Dkt. No. 21.

3 B.      Factual Background

4       Plaintiff began working for Defendant in 2006 as a warehouse order selector.   Dkt. No. 28,

5 Joint Statement of Undisputed Facts (JSF) ¶ 8.  Throughout his employment, he worked the night

6 shift from Sundays through Thursdays.  JSF ¶ 9.  In 2008, Plaintiff enlisted in the Army National

7 Guard and informed Defendant's Human Resources Director, Judith La Frentz, about his enlistment.

8 JSF ¶¶ 16, 17.  Defendant's only written policy about military leaves of absence was contained in its

9 employee handbook and provided that "[a]ll provisions under the [USERRA] will be followed."  JSF

10 ¶ 13.  Even though Defendant preferred that employees provide notification of military leave in

11 writing, it allowed employees to take military leave without written notice, as long as there was

12 advance notice pursuant to USERRA.  JSF ¶¶ 14, 26.

13       Pursuant to company policy, Plaintiff notified La Frentz that he was taking an extended

14 military leave from September 9, 2008, through April 14, 2009.  JSF ¶ 18.  Plaintiff's request was

15 granted, and he provided La Frentz with documents that confirmed he was scheduled for military

16 leave for that period.  JSF ¶¶ 18, 19.  Plaintiff returned from military leave earlier than expected in

17 March 2009 and his employment was reinstated.  JSF ¶ 21.  At that time, Plaintiff was provided with

18 a copy of Defendant's new attendance policy, including the call-in procedures for absences.  JSF ¶¶

19 22, 25.

20       Defendant's new attendance policy defined a "No Call, No Show" as a failure to work a

21 scheduled shift without properly notifying Defendant.  JSF ¶ 23.  An employee that received a "No

22 Call, No Show" would be assessed three points for each violation.  JSF ¶ 23.  Under the policy,

23 Defendant would take appropriate disciplinary steps based on the points accumulated by an

24 employee.  JSF ¶ 23.  Specifically, during a 12-month period, two or more points would result in a

25 written verbal warning, six or more points in a second written warning, eight or more points in a final

26

27       [2]  Both parties do not address the status of Plaintiff's last claim for breach of contract, which

28 was specifically alleged in the Complaint against Defendant and not the Union.  Dkt. No. 1.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    warning, and ten or more points in termination.  JSF ¶ 23.  Defendant would not issue any attendance

2    points if it had written verification for a leave of absence.  JSF ¶ 24.

3            After his return to work, Plaintiff continued to participate in periodic military training

4    exercises.  JSF ¶ 21.  During a meeting in April 2009, La Frentz instructed Plaintiff to give advance

5    notice of any military leave and asked him to provide written confirmation of his military training

6    dates.  JSF ¶ 26.  Based on the 2010 dates provided by Plaintiff's military supervisors, he was granted

7    military leave from January 7 to 10, February 19 to 21, and March 4 to 7.  JSF ¶ 31.  As of March

8    2010, Plaintiff was on notice that he had accumulated four points under Defendant's attendance

9    policy and that ten points would result in termination.  JSF ¶ 34.

10           Plaintiff's military training from March 4 to 7 was cancelled.  JSF ¶ 44.  Plaintiff did not

11   inform Defendant about this cancellation, and Defendant learned about it for the first time through

12   this lawsuit.  JSF ¶ 45.  Plaintiff worked his entire shift on Thursday, March 4, but he did not show up

13   to work on Sunday, March 7.  JSF ¶¶ 39, 40.  Plaintiff also did not call in to explain his absence.  JSF

14   ¶ 43.  Because Plaintiff's absence on March 7 was coded as military leave pursuant to the notice he

15   had provided earlier, Defendant did not take any action at that time.  JSF ¶ 41.

16           On March 7, plaintiff received an e-mail from his Sergeant that there would be a training

17   exercise on March 11 to 14.[3]  JSF ¶ 48.  At work the next day, Plaintiff spoke to his supervisor,

18   Michael Klag, who did not have authority to grant military leaves of absence.  JSF ¶¶ 49, 76.

19   Plaintiff claims that during this meeting he informed Klag that he would be out on military leave on

20   March 11 and 14.   Dkt. No. 32, Pl. Decl. ¶ 27.  Klag denies this and asserts that in their meeting

21   Plaintiff only requested to use a floater holiday for March 10, which he approved without asking why

22   Plaintiff needed it.  JSF ¶¶ 49, 50.  Plaintiff never contacted the Human Resources Department

23   regarding his need to take an additional military leave and never provided any written verification

24   about the upcoming military training.  JSF ¶ 60.

25

26
              [3]  The parties have agreed to this fact, but it appears that Plaintiff actually knew about the
27   March 11 to 14 training on February 16, when his Sergeant explicitly informed him by e-mail that
     the March 4 to 7 training was postponed until the following weekend.  *See* Pl. Decl. ¶ 23.
28

1   Plaintiff was not at work on March 11 and 14, and he did not call in for both absences.  JSF ¶¶

2   52, 59.  On March 14, Klag e-mailed La Frentz about Plaintiff's absences and asked if she had any

3   further information.  JSF ¶ 53.  Plaintiff returned to work on March 15.  JSF ¶ 54.  When asked by

4   Klag about his absences, he replied that he was at military training.  JSF ¶ 55.  Klag did not pass on

5   this information to La Frentz or the Human Resources Department.  JSF ¶ 66.  Under Defendant's

6   attendance policy, Plaintiff was assessed six points for his two absences which resulted in him having

7   ten total points.  JSF ¶ 64.  On March 16, Defendant, without Klag's involvement, suspended Plaintiff

8   with the intent to terminate him.  JSF ¶¶ 61, 66.  Plaintiff claims that when Sheri Sanchez,

9   Defendant's Warehouse Director, gave him the suspension letter, he notified her that he was at

10   military training on March 11 and 14, which she disputes.  Pl. Decl. ¶ 30.  Six days later, Defendant

11   officially terminated Plaintiff's employment.  JSF ¶ 69.

12   Plaintiff filed a grievance regarding his termination with his Union, Teamsters Local 853.

13   JSF ¶ 70.  On March 26, a grievance hearing was held.  JSF ¶ 70.  At the hearing, La Frentz and Jeff

14   Szostak, Defendant's Vice President of Operations, learned for the first time that Plaintiff was

15   claiming to have been at military training on March 11 and 14.  JSF ¶ 71.  Plaintiff, however, did not

16   present any documentation to verify that he was on military leave.  JSF ¶ 70.  On April 7, Plaintiff

17   received a copy of the military order that showed that he was at a training exercise from March 11 to

18   14.  JSF ¶ 73.  Plaintiff claims that his Union Representative produced this document to Defendant at

19   a Board of Adjustments meeting on April 9.  Pl. Decl. ¶ 32.  An arbitration regarding Plaintiff's

20   termination was held on May 18.  JSF ¶ 74.  At the arbitration, Plaintiff again did not present any

21   documentation to prove that he was at a military training on March 11 and 14.  JSF ¶ 74.  The

22   Arbitrator upheld Plaintiff's termination as a "just cause" termination.  JSF ¶ 78.  This lawsuit

23   followed.

24   **III.  LEGAL STANDARD FOR SUMMARY JUDGMENT**

25   Summary judgment is appropriate only when there is no genuine dispute of material fact, and

26   the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The moving party

27   bears both the initial burden of production as well as the ultimate burden of persuasion to

28

4

1   demonstrate that no genuine dispute of material fact remains. *Nissan Fire & Marine Ins. Co., Ltd. v.*

2   *Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden,

3   the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or by the

4   depositions, answers to interrogatories, and admissions on file, designate specific facts showing that

5   there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal

6   quotations and citations omitted). On summary judgment, courts are required to view the evidence in

7   the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

8   *Corp.*, 475 U.S. 574, 587 (1986). If a reasonable jury could return a verdict in favor of the

9   nonmoving party, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

10   242, 248 (1986).

11                                   **IV.  DISCUSSION**

12        In its Reply, Defendant argues that the only issue for the Court to consider on this Motion is

13   whether it is liable for discrimination under USERRA because Plaintiff's military status was a

14   motivating factor in his termination. Dkt. 34 at 2 ("To decide this motion, the Court need only

15   consider whether Williams' termination for violating Defendant's attendance policy was motivated

16   by animus towards Williams' military status). The Court agrees with Defendant and this is the only

17   issue addressed in the Order.[4]

18        USERRA "prohibits discrimination against persons because of their service in the uniformed

19   services." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). A violation of USERRA

20   occurs when a person's:

21

22        [4] Plaintiff's California Military and Veterans Code § 394 claim is analyzed under the same
      legal standard as the USERRA claim. *See Flores v. Von Kleist*, 739 F.Supp.2d 1236, 1257-58 (E.D.
23    Cal. 2010) ("However, it appears that claims brought under California Military and Veterans Code
      section 394 are analyzed under the framework applicable to claims brought under [USERRA]")
24    (citing *Tarin v. Los Angeles*, 123 F.3d 1259, 1266 (9th Cir. 1997)). Thus, the Court, similar to the
      parties, does not discuss the state law claim. Defendant moves to dismiss Plaintiff's third claim for
25    wrongful termination in violation of public policy solely on the grounds that Plaintiff's first two
      claims, which are the predicate for the wrongful termination claim, cannot withstand summary
26    judgment. Because the Court does not grant summary judgment on Plaintiff's underlying claims,
27    Defendant's Motion on the third claim is also denied.
28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   membership, application for membership, service, application for service, or
2   obligation for service in the uniformed services is a motivating factor in the
    employer's action, unless the employer can prove that the action would have been
3   taken in the absence of such membership, application for membership, service,
    application for service, or obligation for service . . . .

4   38 U.S.C. § 4311(c); *see Leisek*, 278 F.3d at 898.  The Ninth Circuit has instructed that courts

5   analyzing USERRA claims should use the scheme of burden of proof allocations approved by the

6   Supreme Court in *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 401 (1983).  *Leisek*,

7   278 F.3d at 898-99.  The Ninth Circuit explained as follows:

8       Under the scheme set forth in *Transportation Management*, the employee first has the
        burden of showing, by a preponderance of the evidence, that his or her protected status
9       was "a substantial or motivating factor in the adverse [employment] action;" the
        employer may then avoid liability only by showing, as an affirmative defense, that the
10      employer would have taken the same action without regard to the employee's
        protected status.

11

12  *Id.* (citations omitted).  Under USERRA, the employer's discriminatory motivation:

13      may be reasonably inferred from a variety of factors, including proximity in time
        between the employee's military activity and the adverse employment action,
14      inconsistencies between proffered reason and other actions of the employer, an
        employer's expressed hostility towards members protected by the statute together with
15      knowledge of the employee's military activity, and disparate treatment of certain
        employees compared to other employees with similar work records or offenses.

16

17  *Leisek*, 278 F.3d at 900 (quoting *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1014 (Fed. Cir.

18  2001)).  "[M]ilitary status is a motivating factor if the defendant relied on, took into account,

19  considered, or conditioned its decision on that consideration."  *Coffman v. Chugach Support Servs.*,

20  411 F.3d 1231, 1238 (11th Cir. 2005).  "The court may consider 'all record evidence,' including the

21  employer's 'explanation for the actions taken.'"  *Leisek*, 278 F.3d at 900 (quoting *Sheehan*, 240 F.3d

22  at 1014).

23      In arguing that Plaintiff's military duty was not a factor in his termination, Defendant first

24  takes the position that Plaintiff was fired solely because he had accumulated ten points under its

25  attendance policy.  According to Defendant, because this has no relation to Plaintiff's military status,

26  it cannot be liable under USERRA.  This argument is misplaced.  "An employer cannot escape

27  liability under USERRA by claiming that it was merely discriminating against an employee on the

28

6

1  basis of his absence when that absence was for military service." *Erickson v. U.S. Postal Serv.*, 571

2  F.3d 1364, 1368 (Fed. Cir. 2009) ("To permit an employer to fire an employee because of his military

3  absence would eviscerate the protections afforded by USERRA . . ."). In other words, because

4  Plaintiff's military absences caused him to be in violation of Defendant's attendance policy and

5  directly resulted in his termination, Defendant cannot shift the blame for Plaintiff's termination to

6  only the attendance policy.

7       Nonetheless, Plaintiff must still establish that there is a genuine dispute as to whether his

8  military service was a motivating factor in his termination. Defendant argues that it could not have

9  been since none of its "decision makers" knew that Plaintiff was claiming he was at military training

10 on March 11 and 14 before he was fired.   But this is not the case.  Viewing the evidence in a light

11 most favorable to Plaintiff, the Court must consider that Plaintiff specifically told Sanchez when she

12 suspended him on March 16 that his two absences stemmed from him attending military training. *See*

13 Pl. Decl. ¶ 30.   Defendant admits that Sanchez, along with La Frentz and Szostak, was involved in

14 the decision to terminate Plaintiff. JSF ¶ 66.  This means that Sanchez knew that Plaintiff claimed

15 that he was on military leave when Defendant officially terminated his employment on March 22.

16 *See* JSF ¶ 69.  While Sanchez disputes Plaintiff's version of their meeting, this is an issue of fact that

17 the Court cannot evaluate at the summary judgment stage. *See T.W. Elec. Serv. v. Pacific Elec.*

18 *Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987) ("Thus, at this stage of the litigation, the

19 judge does not weigh conflicting evidence with respect to a disputed material fact.  Nor does the

20 judge make credibility determinations with respect to statements made in affidavits, answers to

21 interrogatories, admissions, or depositions") (internal citations omitted)).

22      Defendant disingenuously argues in its Reply that this disputed fact is not material because

23 both Plaintiff and Sanchez agree that she did not know about his military training before the

24 suspension letter was issued on March 16. Dkt. No. 34 at 7.  As highlighted above, this argument

25 ignores the elephant in the room that Sanchez allegedly knew about Plaintiff's "military excuse" from

26 March 16 until he was officially terminated on March 22, but she did not do anything about it. *See*

27 Dkt. No. 23, La Frentz Decl. ¶ 41 ("On March 22, 2010, I sent Diwan Williams a termination letter. .

28

7

1  . . Prior to making the decision to terminate Mr. Williams for violation of the attendance policy, I

2  conferred with Sheri Sanchez and Jeff Szostak"). This material fact may lead a reasonable juror to

3  conclude that Defendant had some animus towards Plaintiff and it may have been due to his military

4  status. *See Leisek*, 278 F.3d at 900 (noting that discrimination may be inferred from a variety of

5  factors, including inconsistencies between the proffered reason and other actions of the employer).

6        Other factual issues may also permit a reasonable juror to infer that Plaintiff's termination

7  stemmed from his military status. For instance, Plaintiff claims that he told his supervisor on March

8  8 that he would be absent on March 11 and 14 due to military training. Pl. Decl. ¶ 27. Even though

9  Klag denies this, and Defendant points to his March 14 e-mail as contemporaneous evidence that he

10 had no idea why Plaintiff was absent, this factual dispute, if resolved in favor of Plaintiff, may lead a

11 reasonable juror to conclude that something other than the absences, such as discrimination, may

12 have been a motivating factor in Plaintiff's termination. In the same manner, Defendant's decision

13 not to consult with Klag — who, as Plaintiff's direct supervisor, explicitly knew on March 15 that

14 Plaintiff's absences were due to military training — before terminating Plaintiff's employment may

15 lead to the inference that Defendant purposefully chose not to fully investigate the circumstances

16 behind Plaintiff's absences. *See* JSF ¶ 55.

17       Defendant concedes that Plaintiff was not required to provide advanced written notice of his

18 military leave. JSF ¶ 14. It argues that summary judgment is still appropriate because Plaintiff

19 "failed to provide verification of his service until long after he commenced litigation." Dkt. No. 21 at

20 18. Notably, while Plaintiff was verbally instructed at one point by La Frentz that he needed to

21 provide such verification (JSF ¶ 26), this was not the usual policy for Defendant. *See* Dkt. No. 22,

22 Ex. C, Szostak Depo. at 99 (confirming that as a general rule Defendant does not require written

23 documentation to be provided for military leave). Moreover, Plaintiff claims that Defendant was

24 provided with written verification of his military absences at a Board of Adjustments meeting on

25 April 9. Pl. Decl. ¶ 32. Defendant's denial of this claim only raises another factual issue for a juror.

26       Based on the above disputed facts, Plaintiff has shown that there is a triable issue about

27 whether his military status was a motivating factor in his termination. Much of Defendant's

28

8

1   argument and evidence points to the fact that Plaintiff is not credible, particularly because his story is

2   so far-fetched.  A more rationale explanation as to what transpired, from Defendant's perspective, is

3   that Plaintiff never provided notice about his leave, as he had a practice of doing in the past, and that

4   he did not want to provide any written verification afterwards because Defendant would then discover

5   that he had an unexcused absence on March 7 when his military training was cancelled.  But

6   Defendant will have the opportunity to present this argument and evidence to the jury, which can

7   properly evaluate the credibility of all witnesses and weigh the conflicting evidence — something

8   that this Court cannot do — to determine the motivating factor behind Plaintiff's termination.

9           Defendant's last resort is to argue that it would have terminated Plaintiff's employment

10   regardless of his military status due to its attendance policy, a lack of written verification for his

11   absences, and after-acquired evidence.  As explained above, the first two arguments are not

12   persuasive.  With respect to after-acquired evidence, Defendant argues that it would have fired

13   Plaintiff after it learned in discovery that he had an unexcused absence on March 7 since his military

14   training was cancelled, something that Plaintiff never reported to Defendant.  But, as the parties

15   agree, this after-acquired evidence would only limit the amount of damages that Plaintiff could

16   recover and would not dismiss his claim.  *See McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352

17   (1995).  Because Defendant's Motion, and consequently Plaintiff's Opposition, do not specifically

18   address the issue of how Plaintiff's damages should be limited (e.g., when Defendant specifically

19   discovered Plaintiff's unethical conduct), the Court declines to rule on the issue.  *See id.* at 362 ("The

20   beginning point in the trial court's formulation of a remedy should be calculation of backpay from the

21   date of the unlawful discharge to the date the new information was discovered.  In determining the

22   appropriate order for relief, the court can consider taking into further account extraordinary equitable

23   circumstances that affect the legitimate interests of either party").

24           Finally, the Court considers Defendant's objections to the evidence submitted by Plaintiff in

25   support of his Opposition.  *See* Dkt. No. 35.  In ruling against Defendant, the Court only relies on

26   three facts outside of the JSF and each of these are contained in Plaintiff's Declaration.  Because

27   ruling on each of Defendant's objections would not narrow the issues for trial, the Court only rules on

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

9

1  Defendant's objections for the three facts below, which were the facts considered by the Court.

2      First, Plaintiff testifies that he informed Klag on March 8 about his upcoming military leave.

3  Pl. Decl. ¶ 27.  Defendant does not object to this part of Plaintiff's testimony and no ruling is needed.

4  *See* Dkt. No. 35 (Defendant only objects to the use of the word "acknowledged").  Second, Plaintiff

5  testifies that written verification of his March 11 and 14 training was provided to Defendant at the

6  Board of Adjustments meeting on April 9.  Pl. Decl. ¶ 32.  Defendant objects that under the best

7  evidence rule the document itself should have been presented.  This objection is overruled for the

8  purposes of this Motion.  The parties do not dispute whether there are written documents that

9  corroborate Plaintiff was at military training on March 11 and 14.  The issue is whether Plaintiff

10  provided verification of this training to Defendant.  Thus, the contents of the document are not

11  material to the Court's decision.  And there is no objection from Defendant that Plaintiff lacks the

12  personal knowledge to make this statement.  The third fact relied on by the Court is that Plaintiff told

13  Sanchez on March 16 that his absences were due to military training.  Pl. Decl. ¶ 30.  Defendant

14  objects to this testimony because "it contradicts Plaintiff's prior deposition testimony."  Dkt. No. 35

15  at 15 ("Despite extensive questioning regarding his conversation with Sheri Sanchez at the time of

16  suspension, Plaintiff withheld details at his deposition that he now conveniently testifies to in his

17  declaration").  While the Court is troubled by what appears to be evasive and potentially untruthful

18  testimony by the Plaintiff throughout his deposition, this particular objection is meritless.  When

19  asked at the deposition what transpired when Sanchez gave him the suspension letter, Plaintiff, after

20  stating that he did not really remember the conversation, testified that: "To the best of my

21  recollection, I told [Sanchez] that I was at the military drill."  Dkt. No. 36, Szostak Supp. Decl., Ex. 1

22  at 166-67.  This is consistent with Plaintiff's declaration and Defendant's objection is overruled.[5]

23  ///

24  ///

25

26  [5] Defendant's other objections to paragraph 30 of Plaintiff's Declaration appear to only take issue with Plaintiff's use of the term "again," which insinuates that Plaintiff had told Sanchez that he was absent due to military training before March 16.  The Court has not considered this testimony in its decision and therefore does not rule on the objections.

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

10

**V.   CONCLUSION**

For the foregoing reasons, Defendant's Motion is **DENIED** in its entirety.  The parties are hereby REFERRED to a randomly assigned magistrate judge for a settlement conference.  The parties shall file a joint status report within 14 days of completion of the mediation process.

**IT IS SO ORDERED.**

Dated: December 8, 2011

_____
Maria-Elena James
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
For the Northern District of California

11