UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| DIWAN WILLIAMS,<br><br>              Plaintiff,<br><br>     v.<br><br>SYSCO SAN FRANCISCO, INC.,<br><br>              Defendant.<br>_____/ | No. C 10-03760 MEJ<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL** [Dkt. No. 146] |

## I. INTRODUCTION

Plaintiff Diwan Williams filed this lawsuit against Defendant Sysco San Francisco, Inc. on August 24, 2010, alleging that he was wrongfully terminated in violation of federal and state law based on his status as a member of the military and his military service. Compl., Dkt. No. 1. In his Complaint, Plaintiff asserted claims for: discrimination in violation of the Uniform Services Employment and Reemployment Rights Act ("USERRA"), 42 U.S.C. § 4301 *et seq.*; (2) discrimination in violation of California Military & Veterans Code section 394 *et seq.*; (3) wrongful termination in violation of public policy; and (4) breach of contract. *Id.* The case proceeded to jury trial on April 8 -11, and 15, 2013. On April 15, 2013, the jury returned its verdict, finding for Defendant on Plaintiff's discrimination claims under USERRA and section 394, as well as his claim for wrongful termination in violation of public policy. Dkt. No. 140. The Court therefore entered judgment for Defendant.

Plaintiff now brings a Motion for New Trial pursuant to Federal Rule of Civil Procedure 59(a)(1). Dkt. No. 146. Plaintiff asserts that a new trial is warranted because: (1) the jury's verdict was against the great weight of evidence; (2) after-acquired evidence was improperly admitted and permeated the trial in spite of the Court's order bifurcating liability and damages phases of trial; (3)

the jury engaged in misconduct that was prejudicial to Plaintiff's case; and (4) opposing counsel engaged in misconduct that was prejudicial to Plaintiff's case. Mot. at 12-18. Defendant opposes the Motion, arguing that Plaintiff is misconstruing the trial record, relies on inadmissible evidence in support of his arguments, and fails to set forth any reasoning justifying a new trial. Opp. at 1, Dkt. No. 46.

Because the parties' briefs sufficiently set forth the issues and supporting authorities, and oral argument is unnecessary to clarify any points raised, this matter is suitable for disposition without oral argument. Fed. R. Civ. P. 78(b); Civ. L.R. 7-(1)(b). Having carefully considered the parties' arguments, the Court **DENIES** Plaintiff's Motion.

## II. LEGAL STANDARD

Pursuant to Rule 59(b), within 28 days after entry of judgment, a party may move for a new trial. Rule 59(a) authorizes the Court to grant a new trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1)(a). Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," courts are "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc*., 339 F.3d 1020, 1035 (9th Cir. 2003). The Ninth Circuit has held that the grounds on which a new trial may be granted include, but are not limited to: (1) a verdict that is contrary to the weight of the evidence; (2) a verdict that is based on false or perjurious evidence; or (3) to prevent a miscarriage of justice. *Molski v. M .J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citation and quotation omitted).

## III. DISCUSSION

As indicated above, Plaintiff asserts that a new trial is warranted on four bases. First, Plaintiff argues that the verdict was against the clear weight of the evidence. Mot. at 12. Second, Plaintiff argues that after-acquired evidence was improperly admitted despite the Court's order bifurcating the liability and damages phases of trial. *Id*. at 14. Third, Plaintiff charges that the jury engaged in misconduct that was prejudicial to Plaintiff's case. *Id*. at 16-17. Fourth, Plaintiff advances that opposing counsel engaged in misconduct that was prejudicial to Plaintiff's case. *Id*. at 15. The Court

2

will address each argument in turn.

**A.     The Verdict Was Not Contrary to the Weight of Evidence**

Plaintiff first contends that "the jury's conclusion that Plaintiff's military service was not a motivating factor in Defendant's adverse employment actions against Plaintiff was against the manifest weight of the evidence." *Id.* at 13. As indicated above, Plaintiff asserted a discrimination claim under USERRA. A violation of USERRA occurs when a person's:

> membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service . . . .

38 U.S.C. § 4311(c); *see Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). Plaintiff argues that the parties stipulated to the fact that Plaintiff was absent because he attended military drills on March 11 and 14, 2010, and that Defendant terminated his employment because it assessed Plaintiff with six points for those absences. Mot. at 13. According to Plaintiff, these facts "necessarily establish that military service was a motivating factor in Plaintiff's termination," and the fact that the jury found for Defendant "evidence[s] the jury confusion and bias caused by the extensive focus of the after-acquired evidence throughout the trial." *Id*. at 14.

Plaintiff's argument is unavailing. Setting aside Plaintiff's after-acquired evidence challenge, which the Court addresses below, as Defendant points out, Plaintiff's attendance at military training on March 11 and 14, 2010, while certainly indispensable to his discrimination claim, is not dispositive on the issue of whether Defendant's adverse employment action was motivated by his participation in the military training or his military membership. Pursuant to the parties' stipulated facts, it was undisputed that Plaintiff was absent from work on those dates. However, as set forth in the Court's summary judgment order, there were numerous factual disputes about whether Defendant was on notice that Plaintiff was absent for military training when it made its decision to terminate Plaintiff and whether Plaintiff provided proper advanced notification and verification for his absence. Dkt. No. Dkt. No. 57 at 6-9. Defendant presented evidence on each of these issues, including testimony from each of the employees involved in the decision to terminate Plaintiff that the

1  termination was not based on his military status or service.  Defendant also presented evidence that it
2  had approved all of Plaintiff's prior requests for military leave, that it had counseled him on
3  providing notice and verification for his military leave, and that it strictly and uniformly applied its
4  attendance policy for unexcused absences.  Thus, there was ample evidence before the jury to support
5  its determination that Defendant's decision to terminate Plaintiff's employment for noncompliance
6  with its attendance policy lacked the discriminatory animus required to support a claim under
7  USERRA.  The Court therefore finds no error.

**B.      After-Acquired Evidence**

Plaintiff next contends that a new trial is warranted because his case was prejudiced by the improper introduction of after-acquired evidence during the liability phase of trial. Mot. at 14. Plaintiff advances that throughout trial, "the jury heard . . . evidence and arguments related to Defendant's after-acquired evidence argument that Plaintiff's absence on March 7, 2010, which Defendant claims it did not know was unexcused until after Plaintiff's termination, constituted misconduct of such severity that Plaintiff would have been terminated anyway." *Id*. He argues that the Court ordered bifurcation of liability and damages phases of trial, but "[d]ue to the fact that the Defendant's proposed order to bifurcate specifically requested that punitive damages be separated from the finding liability and actual damages, Plaintiff's counsel was not aware of the scope of the Court's bifurcation order until Wednesday morning April 10, 2013.  Plaintiff's counsel objected to the admission of the after-acquired evidence at this point but the evidence had already heavily referenced during trial.  Although the Court did exclude the after-acquired evidence on Wednesday afternoon, the cat was then already out of the bag and more importantly, the jury never received any curative instruction or information regarding all the after-acquired evidence." *Id*.  Plaintiff also contends that, despite the Court's ruling, "the evidence was still referenced and was treated as admissible during Defendant's closing arguments over Plaintiff's objection." *Id.*

Again, Plaintiff's argument fails.  As Defendant correctly notes, the Court precluded Defendant from arguing that it would have terminated Plaintiff had it known the actual reason for his absence on March 7.  The Court's ruling, however, did not preclude Defendant from presenting

4

evidence relating to Plaintiff's absence on March 7, particularly as it related to Plaintiff's credibility. Plaintiff has not cited to any testimony or evidence in the record from Defendant indicating that it considered Plaintiff's failure to report the change in his military leave to be wrongdoing of such severity that it would have terminated Plaintiff had it known of it at the time of his termination, or any evidence from Defendant regarding the point in time it actually discovered the reason for his March 7 absence. Rather, Defendant presented Plaintiff's deposition testimony regarding the circumstances of his absence on March 7 to impeach his testimony that he was not at work on that date because he overslept. The Court agrees with Defendant that such testimony was relevant for the jury to assess Plaintiff's credibility and motivation for withholding verification of his military training for the following weekend of March 11 and 14, 2010. The Court therefore finds no error.

Plaintiff also contends that Defendant's closing argument focused on Plaintiff's character rather than on Defendant's grounds for terminating Plaintiff's employment, and this "character assassination relied primarily on Defendant's arguments with respect to Plaintiff's absence on March 7, 2010." *Id.* at 16. Plaintiff asserts that this argument was improper because it relied on evidence that should have been ruled inadmissible during trial. *Id.* Defendant, however, maintains that its closing argument raised questions about Plaintiff's credibility and inconsistent testimony. Opp. at 8. It contends that defense counsel made a comment about Plaintiff's possible motivation for not providing Defendant with information about the change in his military leave on March 7, and that this was permissible because it relevant to whether Plaintiff provided notice on March 11 and 14 and also related to Plaintiff's credibility. *Id.* The Court agrees with Defendant. Defendant was permitted to raise questions about Plaintiff's credibility in its closing, particularly as it related to his testimony regarding the March 7 absence. Plaintiff has failed to establish that such argument was prejudicial, much less that it sufficiently permeated the entire trial. The Court therefore rejects Plaintiff's argument.

**C.    Allegations of Jury Misconduct**

Plaintiff argues that a new trial must be granted because of three instances of jury misconduct. First, Plaintiff argues that Suzie Zupan, considered titles of exhibits that were not admitted during

5

trial, but which appeared in the parties' joint exhibit list that was used as an index to the binder of admitted exhibits provided to the jury for deliberation. Mot. at 16. Second, Plaintiff argues that juror Steve Sunberg's post-deliberation comments to Plaintiff suggest "that the jury accepted Defendant's counsel's invitation to decide the case based on defendant's character assassination of Plaintiff rather than on the evidence related to Plaintiff's termination on March 22, 2010." *Id*. at 17. Third, Plaintiff contends that a jury question asking why Plaintiff was late for trial on April 11, 2013, and evidence suggesting that a juror considered this "fact" in reaching the verdict indicates that the jury impermissibly considered external factors in rendering its verdict. *Id*. Each of Plaintiff's arguments lacks merit.

### 1. The Exhibit List

In addition to a copy of the jury instructions and verdict forms, the jury was provided a binder of exhibits admitted into evidence. The binder contained the parties joint exhibit list (Dkt. No. 123), which included titles of all exhibits. Plaintiff contends that after trial, Ms. Zupan contacted Plaintiff's counsel and indicated that she reviewed the description of the exhibits on the exhibit list – including the significance of exhibits that were not admitted – to make her decision during deliberations. Plaintiff proffers a declaration from Ms. Zupan regarding her examination of the exhibit list and the conduct of the jury during deliberations. Zupan Decl., Dkt. No. 146-3. Plaintiff contends that Ms. Zupan's consideration of evidence outside the record is sufficient to compel a new trial. The Court disagrees.

"The near-universal and firmly established common law rule in the United States flatly prohibited the admission of juror testimony to impeach a verdict." *Tanner v. United States*, 483 U.S. 107, 107 (1987); *McDonald v. Pless*, 238 U.S. 264, 267 (1915). Federal Rule of Evidence 606(b) is an embodiment of this longstanding policy, strongly disfavoring the admission of juror testimony to impeach a verdict. It provides:

> **(1) Prohibited Testimony or Other Evidence.** During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

6

    **(2) Exceptions.** A juror may testify about whether:

        (A) extraneous prejudicial information was improperly brought to the jury's attention;

        (B) an outside influence was improperly brought to bear on any juror; or

        (C) a mistake was made in entering the verdict on the verdict form.

Fed. R. Evid. 606(b).

    Rule 606(b) offers a standard governing not only testimony, but any statement made by a juror after the verdict has been reached, including affidavits. *Hatcher v. County of Alameda*, 2011 WL 4634053, at *2 (N.D. Cal. Oct. 5, 2011). When such evidence is submitted, the Court must review the writing under the same standard as would be applied were the statement given as live testimony in court. *Id*. Specifically, "the district court must examine this material to decide whether it falls within the categories of admissible juror testimony permitted by Rule 606(b). Rule 606(b) permits testimony only on the questions of 'whether extraneous prejudicial information was improperly brought to the jury's attention' and 'whether any outside influence was improperly brought to bear on any juror.'" *Hard v. Burlington N. R. Co.*, 870 F.2d 1454, 1461 (9th Cir. 1989). "Within this exception, jurors are limited to testifying as to the existence and nature of extraneous evidence – testimony regarding the impact of such information on any juror or on the jury as a whole is prohibited." *Hatcher*, 2011 WL 4634053, at *2 (citing *Abatino v. United States*, 750 F.2d 1442, 1446 (9th Cir. 1985) ("[J]urors may not be questioned about the deliberative process or subjective effects of extraneous information, nor can such information be considered by the trial or appellate courts.") (quoting *United States v. Bagnariol*, 665 F.2d 877, 884-85 (9th Cir. 1981)). Restricting its review to affidavits and testimony admissible under Rule 606(b), the Court must determine whether these materials are sufficient on their face to require setting aside the verdict and, if so, whether an evidentiary hearing is required. *Hard*, 870 F.2d at 1461.

    Generally, "[e]xtraneous-information cases . . . call for more searching review; we grant a new trial if 'there is a reasonable possibility that the material could have affected the verdict.'" *United States v. Rosenthal*, 454 F.3d 943, 949 (9th Cir. 2006). Unlike ex parte cases, we generally

place the burden "on the party opposing a new trial to demonstrate the absence of prejudice." *Id.* "Although the presence of extrinsic material does not always require a new trial, [citations omitted] we carefully review the circumstances and nature of the material to ensure that jurors deliberate without undue outside pressure or influence." *Id.* "Where extraneous information is imparted, as when papers bearing on the facts get into the jury room without having been admitted as exhibits, or when a juror looks things up in a dictionary or directory, the burden is generally on the party opposing a new trial to demonstrate the absence of prejudice, and a new trial is ordinarily granted if there is a reasonable possibility that the material could have affected the verdict." *Sea Hawk Seafoods, Inc. v. Alyeska Pipeline Service Co.*, 206 F.3d 900, 905 (9th Cir. 2000)

The Court has reviewed Ms. Zupan's Declaration and finds that the only admissible statement in her Declaration is contained in paragraph 9, indicating that the parties' joint exhibit list was included in the binder. The remaining statements in Ms. Zupan's Declaration concern both her and the jury's deliberative process and are therefore inadmissible.

Considering her statement that the joint exhibit list was before the jury, the Court agrees with Defendant that the titles of exhibits that were not admitted is not prejudicial evidence. As Defendant points out, the titles of documents on the exhibit list – without more – have no reasonable connection to the issue of whether Plaintiff's military status was a motivating factor in Defendant's decision to terminate his employment. Opp. at 10. Even as to the exhibits titles that mentioned a verbal warning or some form of "service" or "production" related discipline, because Defendant did not present any testimony that it considered Plaintiff's job performance or other discipline in making its termination decision, such titles did not have any rational connection to the issue of discriminatory animus on the basis of military status or service. The Court therefore finds no basis to grant a new trial based on the joint exhibit list that was included in the exhibit binder.

2. <u>Mr. Sundberg's Post-Deliberation Comment</u>

After deliberations, the jury was given the opportunity to voluntarily speak to the parties and counsel regarding the trial. At that time, Mr. Sundberg, a veteran, expressed his feeling that Plaintiff had poorly represented the military in his conduct at Sysco. Poole Decl., Dkt. No. 146-2. Plaintiff

8

argues that Mr. Sundberg's statement demonstrated that the jury improperly relied on Defendant's cousel's "character assisnation of Plaintiff rather than on the evidence related to Plaintiff's termination," and "suggest[s] bias against the Plaintiff based on [Mr. Sundberg's] view of appropriate conduct of military service members." Mot. at 17. Plaintiff's argument is unavailing. Mr. Sundberg's comment does not amount to extrinsic evidence, but merely reflects his personal assessment of Plaintiff's conduct based on his personal life experiences. *See Hatcher*, 2011 WL 4634053, at *3 (recognizing that "jurors are expected to bring their own personal experiences with them into the courtroom, and may rely on their person knowledge or past experiences when hearing the evidence, deliberating, and deciding their verdict . . . ."); *Rucker v. Patrick*, 2008 WL 4104230, at *9 (discussion of personal experiences is not extraneous evidence under Rule 606(b)). Further, to the extent that Plaintiff relies on statements in Ms. Zupan's Declaration or email messages sent by Mr. Sundberg attached to her Declaration, such material is inadmissible under Rule 606(b) as it pertains to the jury's deliberative process. The Court therefore finds no basis to support a new trial.

### 3. Jury Question Regarding Plaintiff's Absence

During jury deliberations, the jury foreperson submitted a jury question to the Court asking, in part, "Can we find out why [Plaintiff] was late for court on Thursday? 10:45 am?" Dkt. No. 139. Plaintiff argues that the question indicates the jury considered external factors in rendering its verdict, particularly, "that the jury was primarily concerned with Plaintiff's character, which Plaintiff contends was the inevitable result of the improper introduction of after-acquired evidence and arguments at the liability phase of trial." Mot. at 17.

Defendant counters that the Court properly responded to the question by instructing the jury to disregard Plaintiff's late arrival and to only consider testimony and evidence admitted at trial in reaching its verdict. Opp. at 11. Defendant further argues that, to the extent that Plaintiff relies on Ms. Zupan's statement that another juror considered Plaintiff's absence from court during deliberations, the statement should be excluded under Rule 606(b) because it relates to a juror's mental impressions during the deliberative process. *Id*. The Court agrees with Defendant. The Court's instruction adequately addressed the jury question and there is no evidence that the jury

9

thereafter disregarded it. Accordingly, the Court finds no basis to support a new trial.

## IV.  CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion for a New Trial (Dkt. No. 146).

**IT IS SO ORDERED.**

Dated: December 16, 2013

_____
Maria-Elena James
United States Magistrate Judge